IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHARON WISE,<br><br>    Plaintiff,<br><br><br><br>vs.<br><br><br><br>QWEST COMMUNICATIONS INTERNATIONAL, INC.,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR DECISION ON THE ADMINISTRATIVE RECORD AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:08-CV-549 TS |

This matter is before the Court on Plaintiff's Motion for Decision on the Administrative Record and Defendant's Motion for Summary Judgment. Plaintiff seeks to recover disability benefits that she alleges are due to her under the Qwest Disability Plan (the "Plan"), an employee welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA").[1] For the reasons discussed below, the Court will deny Plaintiff's Motion and grant Defendant's Motion.

---

[1] 29 U.S.C. §§ 1001 *et seq*.

I.  BACKGROUND

A.   THE PLAN

The Plan is a self-funded employee welfare benefit plan as defined by ERISA.  The Plan provides the following:

> LTD Benefits—Greater than 12 Months.  After a Participant has received LTD Benefits for 12 months, Disability means the Participant is unable to engage in any occupation or employment, which inability is supported by Objective Medical Documentation, or may reasonably become qualified for by training, education or experience, other than a job that pays less than 60% of his Base Pay at the time the Participant terminates employment due to Disability.[2]

Objective Medical Documentation is defined as "written documentation of observable, measurable and reproducible findings from examination and supporting laboratory or diagnostic tests, assessment or diagnostic formulation, such as, but not limited to, x-ray reports, elevated blood pressure readings, lab test results, functionality assessments, psychological testing, etc."[3]

Under the terms of the Plan, it is the claimant's obligation to provide Objective Medical Documentation to demonstrate disability.  Specifically, the Plan states that it is the claimant's obligation to "[p]rovide[] documentation supporting his Disability to the Third Party Administrator upon request.  Documentation must support the Claim for Disability and include Objective Medical Documentation, and any other information relevant to the nature and duration of the Disability, as well as a plan for treatment or management of the problem."[4]

The Reed Group, Ltd. has served as the Plan's claims administrator.  The Reed Group administers claims under the name "Qwest Disability Services."  Under the Plan, the Reed

---

[2] Plan § 1.14(c).

[3] *Id*. § 1.27.

[4] *Id*. § 5.1(d)(ii).

Group, as claims administrator, has full discretion and power to interpret the Plan and make final determination regarding a participant's eligibility for benefits.[5] The Plan provides:

> The Plan Administrator shall have the right and discretion to determine for all parties, all matters of fact or interpretation relating to the administration of Plan provisions, including questions of eligibility and any other matters. This discretion may be delegated to the Third Party Administrator with respect to its exercise of its powers described in Section 3.2 and to such other persons as may be designated by the Plan Administrator to perform other functions for the Plan. To the extent of any such delegation, the delegate shall have the same powers and authority as the Plan Administrator. The decisions rendered by the Plan Administrator or its delegates shall be conclusive and binding on all persons subject only to the right to appeal under the terms of the Plan.[6]

B.    PLAINTIFF'S CLAIM FOR BENEFITS

Plaintiff began working for Qwest on January 20, 1987. On or about November 13, 2003, Plaintiff made a claim for short-term disability ("STD") benefits under the Plan. The basis for Plaintiff's STD benefits claim was depression. Plaintiff was approved for STD benefits for approximately the following year, except for brief periods when she returned to work in June and July of 2004. Thereafter, Plaintiff was reapproved for STD benefits and continued receiving those benefits through December 2004.

In December 2004, pursuant to the terms of the Plan and her exhaustion of STD benefits, Plaintiff was transitioned from STD benefits to long-term disability ("LTD") benefits. Plaintiff was approved for LTD benefits effective December 25, 2004.

On November 23, 2005, the Plan's claims administrator notified Plaintiff in a letter that it was initiating a review of Plaintiff's claim for ongoing disability benefits. On February 8, 2006, the claims administrator received authorization from Plaintiff for her updated medical records.

---

[5]*Id*. §§ 1.33, 1.50, 3.1, 3.3.

[6]*Id*. § 3.3.

The claims administrator subsequently contacted her treating doctors, Dr. Kocherhans and Dr. Pilgrim, requesting treatment notes.

Dr. Pilgrim provided the claims administrator with forms on Plaintiff on February 11, 2006.  Dr. Pilgrim's notes reflect that he treated Plaintiff for a knee condition and bilateral knee osteoarthritis.  Dr. Pilgrim did not treat Plaintiff for depression, the original grounds for her disability claim.  Dr. Pilgrim stated in his Health Care Provider's Statement of Disability that, in his opinion, Plaintiff's knee condition was not a disabling condition.

On March 23, 2006, the claims administrator received a Health Care Provider's Statement of Disability and additional treatment notes from Plaintiff's treating psychologist, Dr. Kocherhans.  Dr. Kocherhans stated in his Health Care Provider's Statement of Disability that, in his opinion, Plaintiff was totally disabled.

C.     DENIAL OF PLAINTIFF'S CLAIM

On March 30, 2006, the claims administrator forwarded Plaintiff's medical information to Reed Review Services for a psychiatric review, in order to assess whether Plaintiff qualified for continued disability benefits under the Plan.  Reed Review Services provided the claims administrator with a psychiatric review, dated April 10, 2006, prepared by Dr. Schroeder.

Dr. Schroeder's report noted the progress notes from Dr. Kocherhans and noted that these were limited to six brief visits from October 26, 2004, and January 3, 2006.  Dr. Schroeder also noted that Dr. Kocherhans had stated that Plaintiff was totally disabled, but that cognitive functions were not formally tested.  Dr. Schroeder also noted that Plaintiff's previous doctor had indicated in July 2005, that Plaintiff was not totally disabled.

Dr. Schroeder's report then went on to respond to a series of questions provided by the Plan's claims administrator.  The following questions and answers are relevant to this matter:

**5.     Could this employee return to work at any occupation/any employer?**
The available information did not present a psychiatric reason why the employee could not return to work at any occupation/any employer at this time.

**6.     Please list all appropriate work restrictions, the effective dates and expected duration of each**.
The available information did not support the presence of work restrictions at this time.[7]

Dr. Schroeder concluded his report as follows:

The record noted long-standing subjective complaints of depression and anxiety. However, the record did not provide a sufficiently detailed description of these symptoms (such as their intensity, frequency and duration) to establish that they were causing impairment. The record did not document symptoms of a severity that would support the presence of impairment. Although the doctor stated that the employee had long-standing suicidal thoughts, these thoughts were without intent; the doctor did not explain why these symptoms would prevent all work.

Objective information, as by a detailed mental status exam, psychological testing or collateral information from others, helps assess how subjective symptoms affect ability to function. The record did not contain such detailed objective information. For example, although the doctor stated that the employee had difficulty concentrating, he stated that he had not performed a formal cognitive evaluation; and did not provide specific examples of how concentration problems affected the employee's daily life. The record did not document more severe observed signs of psychiatric illness, such as marked deficits in organization of thought, reality testing, cognitive or motor functioning, communication or hygiene.

The record did not provide a specific reason why the employee could not perform any work. The record did not describe any job duties that the employee could not perform. A mental disorder severe enough to prevent work would be expected to cause significant impairment to other life activities as well. The record did not provide a detailed description of the employee's daily activities or describe impairment to these activities.

The nature and frequency of treatment—only six visits over more than a year, without a clear psychotherapy treatment plan, or referral to a psychiatrist—is not consistent with the expected treatment plan for a more severe mental disorder.[8]

---

[7]Admin. Rec. 47.

[8]*Id*. at 47-48.

The claims administrator also requested that a Transferrable Skills Analysis ("TSA") be conducted to assess Plaintiff's ability to work.  On April 12, 2006, Genex Services, Inc. prepared a TSA to assess Plaintiff's "education, training and/or experience to determine if the claimant can perform other occupations that can earn greater than $2278.53 per month" and, thus, determine whether Plaintiff qualified as disabled under the terms of the Plan.[9]

The TSA indicated that Plaintiff was capable of performing multiple positions in which she could earn 60% or more of her salary at Qwest, including credit clerk, meter reader, mail handler, maintenance service dispatcher, and repair order clerk.

On April 17, 2006, the claims administrator informed Plaintiff that it had completed the review of her LTD benefits claim and had determined that she did not qualify for benefits because she was not disabled under the terms of the Plan.  That letter indicated that this decision was based on medical documentation from Plaintiff's treating providers, the report from Dr. Schroeder, and the TSA prepared by Genex.  The letter also indicated that Plaintiff had 180 days to appeal the decision.

Plaintiff filed this action on July 18, 2008.

## II.  DISCUSSION

Plaintiff makes two arguments in her Motion.  First, Plaintiff argues that the standard of review applicable in this matter is de novo based on Utah Admin. Code R590-218.  Plaintiff also argues that if an abuse of discretion standard is applied, Defendant wrongly denied her benefits.

---

[9] *Id*. at 34.

A.	STANDARD OF REVIEW

The Court turns first to the determination of the appropriate standard of review. Plaintiff argues that Utah Admin. Code R590-218 requires that the Court review Defendant's determination of coverage under a de novo standard. Defendant argues, in response, that ERISA preempts the Utah Admin. Code R590-218 and that the Court should apply an arbitrary and capricious standard of review.

The Court need not discuss Plaintiff's contention in great detail because the Court has decided this issue on a number of occasions.[10] For the reasons stated in *Lucero*, *Hancock*, and *Weeks*, the Court finds that Utah Admin. Code R590-218 is preempted by ERISA. Therefore, the Court will apply an arbitrary and capricious standard.

B.	DENIAL OF BENEFITS

As set forth above, the Court finds that the arbitrary and capricious standard applies here.

> Where, as here, an ERISA plan grants a plan administrator or a delegate discretion in interpreting the terms of, and determining the grant of benefits under, the plan, [the Court is] required to uphold the decision unless it is arbitrary and capricious. In applying the arbitrary and capricious standard, the decision will be upheld so long as it is predicated on a reasoned basis. In fact, there is no requirement that the basis relied upon be the only logical one or even the superlative one. Accordingly, [the Court's] review inquires whether the administrator's decision resides somewhere on a continuum of reasonableness—even if on the low end.
> 
> A lack of substantial evidence often indicates an arbitrary and capricious decision. Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. Substantial evidence means more than a scintilla, of course, yet less than a preponderance. The substantiality of the

---

[10]*Lucero v. Hartford Life & Accident Ins. Co.*, 2009 WL 2170048, *5 (D. Utah July 17, 2009); *Hancock v. Metropolitan Life Ins. Co.*, 2008 WL 2996723, *6 (D. Utah Aug. 1, 2008); *Weeks v. UNUM Group*, 2008 WL 2224832, *6 (D. Utah May 28, 2008).

evidence is evaluated against the backdrop of the administrative record as a whole.[11]

Plaintiff argues that even in the arbitrary and capricious standard is applied here, Defendant's denial of disability benefits was erroneous. Because the administrative record fails to show that Defendant abused its discretion in deciding that Plaintiff was ineligible for continued disability benefits, the Court will deny Plaintiff's Motion.

The Court finds that the claims administrator's decision was based on substantial evidence, including the medical documentation provided by Plaintiff's medical providers, the report prepared by Dr. Schroeder, and the TSA prepared by Genex. In his report, Dr. Schroeder examined Plaintiff's medical records. Dr. Schroeder concluded, however, that those records did not document symptoms of a severity that would support the presence of impairment. Dr. Schroeder also explained the importance of objective evidence and cited to the lack of objective evidence supporting Plaintiff's claim. The TSA concluded that Plaintiff was capable of performing multiple positions in which she could earn 60% or more of her salary at Qwest. Based on this, the Court cannot find that Defendant's decision was arbitrary and capricious.

Plaintiff takes issue with the fact that the claims administrator relied solely upon objective evidence in making its determination. However, as set forth above, the Plan requires disability claims to be supported by objective medical evidence. The claims administrator cannot be faulted for adhering to the provisions of the Plan. Therefore, this argument, and Plaintiff's argument that she was not on notice that objective evidence was required, must be rejected.

---

[11] *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (internal quotation marks and citations omitted).

### III.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Decision on the Administrative Record (Docket No. 18) is DENIED.  It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 20) is GRANTED.  It is further

ORDERED that the hearing set for September 17, 2009, is STRICKEN.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff and close this case forthwith.

DATED   August 12, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge